[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12301
Non-Argument Calendar
_____

Agency No. A089-274-133

AYMAN OMAR ABDALLAH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 30, 2016)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Petitioner Ayman Abdallah, a native of Kuwait and a citizen of Egypt, seeks review of the Board of Immigration Appeals's ("BIA") order, affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  After careful review, we dismiss the petition for review in part and deny in part.

## I.  BACKGROUND

### A.    Initiation of Removal Proceedings

In February 2007, Petitioner entered the United States on a non-immigrant student visa with permission to remain in the United States for a temporary period not to exceed the duration of his status as a student.  Petitioner's status as a student ended on April 22, 2009, when he dropped out of college.

In October 2010, the Department of Homeland Security ("DHS") issued Petitioner a notice to appear, charging him with removability for remaining in the United States for a time longer than permitted, pursuant to 8 U.S.C. § 1227(a)(1)(b), and for failing to comply with the conditions of his non-immigrant status, pursuant to § 1227(a)(1)(C)(i).  Petitioner later conceded his removability and indicated that he sought relief in the form of asylum and withholding of removal.

2

**B.      Asylum Application and Merits Hearing**

In December 2012, Petitioner applied for asylum, withholding of removal, and CAT relief.  In his application, Petitioner claimed that he feared harm or mistreatment if he returned to Egypt because of his religion, political opinion, and membership in a particular social group.  Specifically, he feared he would be persecuted for refusing to serve in the Egyptian military.  Additionally, although he was born Muslim, he had married a Christian woman and his two United States citizen children attended both mosques and churches.

The IJ conducted a merits hearing on Petitioner's application at which Petitioner testified as the sole witness.  According to Petitioner, he feared returning to Egypt because of two reasons:  his religion and being forced to join the Egyptian military.  Petitioner explained that his wife was a practicing Catholic, but, although born a Muslim, he had become an atheist and no longer practiced any religion.  Specifically, he claimed to have stopped practicing Islam a couple of months before the hearing.  Because the penalty for converting or rejecting Islam was death, Petitioner stated that his recent rejection of Islam would cause him to be killed or tortured if he returned to Egypt.  In particular, a group of 3,000 people had recently killed four people for rejecting Islam, and the Egyptian government did nothing to protect them.

3

Petitioner also feared being forced to join the Egyptian military—an entity responsible for killing peaceful protesters and "prosecuting" Christians.  Because every male between the ages of 18 and 30 years old is required to join the military, Petitioner, who was 26 years old, would be forced to join the military if he returned to Egypt.  In doing so, he would have no control over his position within the army and might be forced to hurt peaceful protesters or Christians.

Petitioner did not file for asylum when he entered the United States in 2007 because the situation in Egypt was stable at that time.  He decided to file for asylum in December 2012—after he was already in removal proceedings—because the army had taken control of Egypt and had begun to establish an Islamic state. Petitioner acknowledged on cross-examination that he did not suffer any persecution in Egypt before coming to the United States.  At the time he filed his asylum application, he feared President Mohammed Morsi, the Muslim Brotherhood, and the Supreme Council of the Egyptian army.  The Supreme Council first took over in February 2012, and then in June 2012, President Morsi was elected and he started to restrict certain freedoms.  However, the Supreme Council later overthrew President Morsi and has since elected a new president.

## C.    Decisions of the IJ and BIA

The IJ denied Petitioner's claims for asylum, withholding of removal, and CAT relief.  At the outset, the IJ determined that Petitioner had failed to file an

4

asylum application within one year of his arrival in the United States. As to Petitioner's claim that changed conditions in Egypt excused his tardy filing, the IJ noted that Petitioner's claim constantly changed as conditions in Egypt changed and that some portions of Petitioner's claim would be barred by his untimely filing. Moreover, as Petitioner conceded, his fear of returning had only materialized when he was served with the notice to appear.

As to the merits of Petitioner's claims, the IJ found Petitioner not to be credible based on numerous inconsistencies, implausibilities, and a lack of corroboration. The IJ ultimately concluded that the evidence and Petitioner's testimony did not support a finding of past persecution. Nor had Petitioner established a reasonable fear of future persecution based on one of the five protected grounds. In particular, binding precedent held that the prospect of forced military conscription did not establish a fear of future persecution. Moreover, the documentary evidence did not support Petitioner's claim that he would be forced to engage in illegal activities at the behest of the military. As to his claim that he would be persecuted for becoming an atheist, the record did not indicate that this personal change in religion would be publicly noticeable. Finally, the IJ denied Petitioner's claims for withholding of removal and CAT relief.

The BIA affirmed the IJ's decision. The BIA first determined that the IJ properly pretermitted Petitioner's asylum application because Petitioner's fear that

he would be forced to join the military and obey unlawful military orders existed at the time of his arrival in the United States.  However, even assuming that his asylum application was timely filed and that he had testified credibly, the BIA concluded that Petitioner had not established that his subjective fear of returning to Egypt was objectively reasonable.  Citing our decision in *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346 (11th Cir. 2008), the BIA stated that forced military conscription does not constitute persecution.  Moreover, Petitioner's fear that he would be forced to obey unlawful military orders was speculative.  Because Petitioner did not meaningfully challenge the IJ's denial of his claims based on his religious beliefs and political activities, the BIA did not address those claims.  Finally, the BIA agreed with the IJ's denial of Petitioner's claims for withholding of removal and CAT relief.

## II.  DISCUSSION

On appeal, Petitioner argues that he met his burden of proof for establishing eligibility for asylum, withholding of removal, and CAT relief.  Specifically, he argues that he demonstrated a well-founded fear of future persecution based on his claim that he would be conscripted into the Egyptian army and would be forced to obey unlawful orders.[1]

---

[1]  Because Petitioner did not challenge the IJ's denial of his claims based on his religion or political activities before the BIA, he failed to exhaust these claims.  *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).  In any event, he does not raise these

## A.    Standard of Review

We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision, in which case we review both decisions. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 (11th Cir. 2011).  We also review the IJ's decision to the extent that the BIA adopted its reasoning or found the IJ's reasons to be supported by the record.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Here, because the BIA issued its own opinion, we review the BIA's decision.  But because the BIA also agreed with several aspects of the IJ's opinion, we review the decision of the IJ to the extent of that agreement.  *See id.*

We review our subject matter jurisdiction *de novo*.  *Guzman-Munoz v. U.S. Att'y Gen.*, 733 F.3d 1311, 1313 (11th Cir. 2013).  We review factual findings for substantial evidence.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).  Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quotation omitted).  We view the evidence in the light most favorable to the agency's decision, drawing all reasonable inferences in favor

---

issues on appeal to us, and thus, he has abandoned them as well.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  Additionally, Petitioner abandoned any argument he may have had as to the BIA's finding that he did not suffer past persecution.  *See id.*

of that decision.  *Id.*  In other words, we cannot overturn a finding of fact unless the record compels it.  *See id.* at 1287.

### B.    Appellate Review of the Denial of Asylum

An alien must apply for asylum within one year after the date of his arrival in the United States unless he "demonstrates to the satisfaction of the Attorney General" either the existence of changed circumstances which materially affect the applicant's asylum eligibility or extraordinary circumstances related to the delay in filing.  8 U.S.C. § 1158(a)(2)(B), (D).  The Immigration and Nationality Act ("INA"), however, provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an applicant's asylum application.  8 U.S.C. § 1158(a)(3).  Stated another way, we lack jurisdiction to consider whether an asylum applicant met the one-year filing deadline, or whether extraordinary circumstances existed to justify the untimely filing.  *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

Here, the BIA agreed with the IJ's finding that Petitioner's asylum application was untimely.  We therefore lack jurisdiction to consider the BIA's denial of Petitioner's asylum claim and dismiss this portion of Petitioner's petition for review.  *See* 8 U.S.C. § 1158(a)(3); *Ruiz*, 479 F.3d at 765.

8

### C.     Withholding of Removal and CAT Relief

"An alien seeking withholding of removal under the INA must show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). The burden is on the alien to show a clear probability of future persecution, meaning that it is "more likely than not" that he will be persecuted or tortured if returned to his country. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

An applicant may satisfy his burden of proof for withholding of removal in two ways. First, he may establish past persecution based on a protected ground. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). Past persecution creates a rebuttable presumption that his life or freedom would be threatened upon return to his country. *See id.* Petitioner conceded at the merits hearing that he did not suffer any persecution before coming to the United States. However, an alien who does not show past persecution may still be entitled to withholding of removal if he establishes that it is more likely than not that he would be persecuted upon removal due to a protected ground. *Id.*

In order to succeed on a CAT claim, the applicant "must demonstrate it is more likely than not that [he] will be subjected to pain and suffering at the hands or

9

acquiescence of the government." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010).

Substantial evidence supports the BIA and IJ's denial of withholding of removal and CAT relief because Petitioner failed to establish that it is more likely than not that he will be persecuted or tortured if he returns to Egypt. Petitioner's claim is based on his fear that he will be forced to join the Egyptian army, an organization which he contends engages in conduct that is condemned by the international community. We have held that compulsory military service alone is not enough to establish a well-founded fear of future persecution. *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346 (11th Cir. 2008) (concluding that substantial evidence supported the denial of asylum, in part because the applicant failed to establish a well-founded fear of future persecution based on his claim that he would be forced to join the Eritrean military). Rather, an applicant must prove "either that he would be disproportionately punished for refusing to serve in the . . . military or that he would be forced to join an internationally condemned military." *Id.*

The record does not compel a finding that Petitioner will be disproportionately punished for refusing to serve in the military. In fact, Petitioner does not argue that he will be disproportionately punished for refusing to serve. In any event, because the record shows that those who refuse to serve in the military

10

are subject only to fines and a one year term of imprisonment, it does not compel a finding that Petitioner would be subject to disproportionate punishment.

Instead, Petitioner bases his objection to removal on his argument that the Egyptian army is "internationally condemned." In support of this argument, he points to an internet article that purportedly shows that Egyptian security forces had murdered 59 protesters over the course of ten days in 2013. While the article discusses violence between protesters and security forces, which resulted in the deaths of 59 people, it does not state that 59 protesters were murdered or that the Egyptian military had been internationally condemned. Instead, the article states that the United States had condemned the violence and called for an investigation into "all claims of violence and wrongdoing by security officials."

Substantial evidence also supports the BIA's finding that Petitioner's claim that he would be forced to carry out unlawful orders is purely speculative. Petitioner asserts that, if a member of the Egyptian army, he would be forced to harm protesters and Christians. However, he points to no evidence in the record to support this contention. Although there is evidence of isolated attacks on civilians and Christians, there is no evidence that soldiers were ordered to carry out these attacks. To the contrary, the record shows that three soldiers were imprisoned for killing protesters, the United Nations Security Council did not blame the government for the crackdown on protesters, and, in at least one instance, security

11

forces stepped in to stop sectarian violence.  Furthermore, much of the evidence shows violence perpetrated by police or private groups, not the military.  *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (stating that evidence consistent with acts of private violence does not constitute evidence of persecution based on a statutorily protected ground).  In sum, the record does not compel a finding that it is more likely than not that Petitioner would be forced to join an internationally-condemned organization or that he would be forced to carry out unlawful orders.

Finally, substantial evidence supports the BIA and IJ's denial of Petitioner's CAT claim.[2]  Because Petitioner provided no evidence suggesting that soldiers who refuse to join the army or who fail to carry out orders are tortured, the record does not compel a finding that Petitioner faced a clear probability of torture by the government.  *See Lapaix*, 605 F.3d at 1145.  Accordingly, we deny this portion of the petition for review.[3]

**PETITION DISMISSED IN PART AND DENIED IN PART.**

---

[2]  We reject the Government's argument that Petitioner waived any challenge to the BIA's denial of his CAT claim on appeal, as Petitioner did make more than passing references to this claim. *See Sepulveda*, 401 F.3d at 1228 n.2.

[3]  Petitioner also argues that the BIA erred by affirming the IJ's finding that he was not credible. We do not address this argument because the BIA did not adopt the IJ's adverse credibility determination.  *See Carrizo*, 652 F.3d at 1330; *Seck*, 663 F.3d at 1364.  Instead, the record shows that the BIA assumed that, even if Petitioner had testified credibly, he failed to show that his subjective fear of future persecution was objectively reasonable.